UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,
and GEICO CASUALTY COMPANY,

       Plaintiffs,

    v.

RELIEF MEDICAL, P.C., YURY KOYEN, M.D.,
DIAGNOSTIC MEDICINE, P.C., ALEKSANDR
LEVIN, M.D., DAI MAI ACUPUNCTURE, P.C.,
IGOR MAYZENBERG, L.AC., AM
CHIROPRACTIC, P.C., AMBER STREET
CHIROPRACTIC, P.C., ALEXANDER
MAZUROVSKY, D.C., FINE MOTOR
PHYSICAL THERAPY, P.C., and
JOSEPH SEDRAK,

       Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-2165 (MKB)

MARGO K. BRODIE, United States District Judge:

   Plaintiffs Government Employees Insurance Company ("GEICO"), GEICO Indemnity

Company, GEICO General Insurance Company, and GEICO Casualty Company commenced the

above-captioned action against Defendants Relief Medical, P.C., Yury Koyen, M.D., Diagnostic

Medicine, P.C., Aleksandr Levin, M.D., AM Chiropractic, P.C., Amber Street Chiropractic, P.C.,

Alexander Mazurovsky, D.C., Fine Motor Physical Therapy, P.C., Joseph Sedrak (the "Settling

Defendants"),[1] Igor Mayzenberg, L.Ac., and Dai Mai Acupuncture, P.C. (the "Mayzenberg

---

[1] On June 2, 2021, Plaintiffs advised the Court that they reached a settlement with the
Settling Defendants and are "working to finalize the terms of the settlement agreements." (Pls.'
Letter dated June 2, 2021, Docket Entry No. 49.) The Settling Defendants are scheduled to file a
stipulation of dismissal on or before August 20, 2021. (Settling Defs.' Letter dated July 20,
2021, Docket Entry No. 51; Order dated July 21, 2021.)

Defendants")[2] on May 13, 2020.  (Compl., Docket Entry No. 1.)  Plaintiffs allege, *inter alia*, that the Mayzenberg Defendants wrongfully obtained no-fault insurance reimbursements relating to healthcare services in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)–(d) ("RICO") and are liable for common law fraud and unjust enrichment, (*id.* ¶¶ 1, 407–413, 454–473, 532–545), and seek damages and a declaratory judgment, (*id.* at 114–118).

On November 9, 2020, Plaintiffs moved to (1) stay all no-fault "insurance collection arbitrations pending before the American Arbitration Association ('AAA') between [Plaintiffs] and . . . Defendants" and enjoin "Defendants from commencing any further [no-fault] insurance collection arbitrations against [Plaintiffs], pending the disposition of [Plaintiffs'] declaratory judgment claim" and (2) enjoin "Defendants from commencing any [no-fault] insurance collection lawsuits against [Plaintiffs], pending the disposition of [Plaintiffs'] declaratory judgment claim," and Defendants opposed the motion.[3]  For the reasons set forth below, the Court grants Plaintiffs' motion to stay proceedings.

---

[2]  Although Plaintiffs and the Settling Defendants are finalizing settlement agreements, discovery between Plaintiffs and the Mayzenberg Defendants remains ongoing.  (Pls.' Letter dated June 2, 2021; Order dated June 3, 2021.)

[3]  (Pls.' Mot. to Stay ("Pls.' Mot."), Docket Entry No. 38; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem.") 1, annexed to Pls.' Mot., Docket Entry No. 38-1.)  The Settling Defendants and the Mayzenberg Defendants filed separate opposition papers.  (Mayzenberg Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n"), Docket Entry No. 35; Settling Defs.' Opp'n to Pls.' Mot. ("Settling Defs.' Opp'n"), Docket Entry No. 36.)

Because the Settling Defendants are scheduled to file a stipulation of dismissal on or before August 20, 2021, (Order dated July 21, 2021), the Court construes the motion to stay as applicable to the Mayzenberg Defendants, details the facts alleged in the Complaint as they pertain to the Mayzenberg Defendants, and reviews the motion to stay based on the Mayzenberg Defendants' opposition papers.  In the event that Plaintiffs and the Settling Defendants are unable to reach a settlement, because the arguments against a stay raised by the Settling Defendants are analogous to those raised by the Mayzenberg Defendants, (*see* Settling Defs.' Opp'n), the Court's decision would also apply to the Settling Defendants.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes

of this Memorandum and Order.

### a.  New York's no-fault insurance scheme

Under New York's no-fault law, automobile insurers provide mandatory coverage for

certain no-fault benefits, including necessary expenses for medical treatment up to $50,000.[4]

N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103.  "[I]ndividuals injured in car accidents assign their

statutory benefits to licensed medical professionals, who submit claims for medically 'necessary'

treatments directly to the injured party's insurance carriers."  *United States v. Zemlyansky*, 908

F.3d 1, 7 (2d Cir. 2018) (first quoting N.Y. Ins. Law § 5102; and then citing 11 N.Y. Comp.

Codes R. & Regs. § 65-3.11).  A regulation implementing section 5106(b) of the New York

Insurance Law states that "[i]n the event any person making a claim for first-party benefits and

the [insurance] [c]ompany do not agree regarding any matter relating to the claim, such person

shall have the option of submitting such disagreement to arbitration."  11 N.Y. Comp. Codes R.

& Regs. § 65-1.1(a), (d); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 97–98 (2d Cir. 2014)

(quoting 11 N.Y. Comp. Codes R. & Regs. § 65-1.1(a), (d)).

Plaintiffs seek damages from the Mayzenberg Defendants because they allegedly

submitted claims to Plaintiffs for reimbursement of services that were, at least in some instances,

not medically necessary or not ever rendered and seek to stay arbitration of no-fault collection

claims.  (Compl. ¶¶ 407–413, 454–473, 532–545.)

---

[4]  Because it is helpful to understand the facts of the case, the Court provides a brief overview of New York's no-fault insurance scheme before discussing the relevant facts.  *See generally Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 281–83 (E.D.N.Y. 2013) (providing a detailed overview of New York's no-fault scheme).

### b.  The parties

Plaintiffs "are Maryland corporations with their principal places of business in Chevy Chase, Maryland" that underwrite "automobile insurance in New York" and "provide Personal Injury Protection Benefits" to automobile victims covered by Plaintiffs' insurance policies pursuant to New York Comprehensive Motor Vehicle Insurance Reparations Act §§ 5101 *et seq.* and 11 N.Y. Comp. Codes R. & Regs. §§ 65 *et seq.*  (*Id.* ¶¶ 10, 24.)

Dr. Koyen is a medical doctor who owns Relief Medical — a medical professional corporation — and is the primary leaseholder at "a purported medical clinic located at 265 Avenue X, Brooklyn, New York" (the "Avenue X Clinic").  (*Id.* ¶¶ 2, 11, 54.)  Mayzenberg is a citizen of New York who is "licensed to practice acupuncture" and owns Dai Mai Acupuncture, P.C., an "acupuncture professional corporation."[5]  (*Id.* ¶¶ 18–19.)

### c.  The alleged fraudulent scheme

Beginning in 2014, Defendants "masterminded and executed a complex fraudulent scheme wherein" Relief Medical, P.C., Diagnostic Medicine, P.C., AM Chiropractic, P.C., Amber Street Chiropractic, P.C., Fine Motor Physical Therapy, and Dai Mai Acupuncture, P.C. ("health corporations") billed Plaintiffs for "millions of dollars in no-fault insurance benefits [that] they were never entitled to receive."  (*Id.* ¶ 42.)  "Dr. Koyen headed the scheme at the Avenue X Clinic by using Relief Medical to sublease space to other healthcare providers and by paying kickbacks in exchange for the referral of automobile accident victims."  (*Id.* ¶ 2.)  The Mayzenberg Defendants subleased space and were "required to pay kickbacks in exchange for

---

[5]  Mayzenberg was previously named as a defendant in "lawsuits which alleged, among other things, that Mayzenberg paid kickbacks in exchange for patient referrals to the Avenue X Clinic and provided excessive and medically unnecessary acupuncture services . . . at the Avenue X Clinic."  (Compl. ¶¶ 20, 81.)

the referral of automobile accident victims to the Avenue X Clinic" and as a "precondition of renting office space." (*Id.* ¶¶ 5, 67.) Mayzenberg paid kickbacks to Nina Brouk Advertisement, LLC ("Nina Brouk") and Dona Catalina Marketing, LLC ("Dona Catalina") and "issued checks for the referral of patients to a series of shell companies secretly owned and operated by" Igor Dovman and Tamilla Dovman (the "Dovmans"). (*Id.* ¶¶ 60, 80–82.) Although "virtually nothing" was done "to market the existence of the [health corporations] to the general public," Avenue X Clinic "received a steady volume of patients . . .through illegal fee-splitting, kickback, and referral arrangements." (*Id.* ¶¶ 46–52.)

### d.  Services rendered

The Mayzenberg Defendants engaged in an improper referral arrangement and subjected the automobile victims to "exaggerated diagnoses" and "medically unnecessary acupuncture services" at the Avenue X Clinic. (*Id.* ¶¶ 320, 322.) They "virtually never" conducted "legitimate" acupuncture examinations on the automobile victims and failed to develop "discrete treatment plans designed to treat the[m]." (*Id.* ¶¶ 341, 343.) The Mayzenberg Defendants conducted initial and follow-up acupuncture examinations using "checklist forms," which were billed under current procedural terminology ("CPT") codes 99203 and 99202 respectively. (*Id.* ¶¶ 352, 355, 369, 371.) "CPT code 99203 typically requires that an acupuncturist spend [thirty] minutes of face-to-face time with the [patient or their] family" but the initial examinations at Dai Mai Acupuncture, P.C., "rarely lasted more than five to [ten] minutes" as the Mayzenberg Defendants "prepared reports containing no information on the patient's history other than documenting whether that patient was a driver, passenger, or pedestrian." (*Id.* ¶¶ 348, 350–351, 354, 358.) "CPT code 99202 typically requires that the physician or acupuncturist spend [twenty] minutes of face-to-face time with the [patient or their] family, along with taking an

expanded problem-focused history and an expanded problem focused examination" but at the follow-up examinations, the Mayzenberg Defendants used "pre-printed checklist and template forms that . . . d[id] not reflect any genuine examination of the [automobile victims] and contain[ed] purported findings that are, at best, a reiteration of . . . subjective complaints." (*Id.* ¶¶ 368–370.)

In addition, the Mayzenberg Defendants "insert[ed] needles into [patients] in an assembly-line fashion"; "fabricated exams and reports used to support excessive and medically unnecessary acupuncture treatments not warranted by the patients' conditions"; "fraudulently inflated their billing by charging for . . . 'adjunct' acupuncture procedure[s]" such as cupping and moxibustion; used CPT codes reserved for new patients during follow-up examinations; "routinely bill[ed] three units of acupuncture per treatment date per patient" for short-timed treatments, despite the requirement that personal contact last a minimum of fifteen minutes per billed unit; "merely placed needles in [the patients'] necks and backs, set a timer, and left the [patients] unattended until [fifteen] minutes had elapsed" when the treatment lasted fifteen minutes; and did not treat acupuncture patients in accordance with "legitimate acupuncture practices." (*Id.* ¶¶ 325, 329–335, 338, 371–379, 381–387.)

### e. Procedural history

On May 13, 2020, Plaintiff filed the Complaint alleging that Defendants wrongfully obtained no-fault insurance reimbursements relating to healthcare services in violation of the RICO, 18 U.S.C. §§ 1962(c)–(d) and are liable for common law fraud and unjust enrichment, (*Id.*) Plaintiffs allege that "Defendants have no right to receive payment for any pending bills because the [f]raudulent [s]ervices were not medically necessary" and that Defendants "intentionally misrepresented and exaggerated the level of services purportedly provided in order

6

to inflate the charges submitted." (*Id.* ¶ 4.)  Plaintiffs seek "recovery of the substantial sums stolen from it, along with a declaration" of its reimbursement obligation as "there is an actual case and controversy between . . . [Plaintiffs] and Dai Mai [Acupuncture, P.C.] regarding more than $72,206.13 pending fraudulent billing, along with more than $84,233.00 that [Plaintiffs] paid Dai Mai [Acupuncture, P.C.] pursuant to fraudulent billing."  (*Id.* ¶¶ 4, 409.)

Dai Mai Acupuncture, P.C. "is currently prosecuting [thirty-nine] AAA arbitrations and two civil court lawsuits" seeking to collect more than $74,000.00.  (Pls.' Mem. 8.)  Dai Mai Acupuncture, P.C. filed ten "AAA arbitrations seeking to collect more than $18,000.00 . . . after [Plaintiffs] filed the Complaint."  (*Id.*)

On November 9, 2020, Plaintiffs moved to stay Defendants from pursuing no-fault insurance claims in other forums and Defendants opposed the motion.  (Pls.' Mot.; Defs.' Opp'n.)  Although the Settling Defendants are scheduled to file a stipulation of dismissal on or before August 20, 2021, (Settling Defs.' Letter dated July 20, 2021; Order dated July 21, 2021), discovery between Plaintiffs and the Mayzenberg Defendants remains ongoing, (Pls.' Letter dated June 2, 2021; Order dated June 3, 2021).

## II.  Discussion

### a.  Standard of review

"The preliminary injunction standard applies where . . . a party seeks to stay pending no-fault insurance claims and to enjoin the filing of further claims during the pendency of a lawsuit seeking to invalidate those claims." *GEICO v. Beynin*, No. 19-CV-6118, 2021 WL 1146051, at *4 (E.D.N.Y. Mar. 25, 2021) (collecting cases); *see also GEICO v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020) (analyzing a motion to stay and enjoin no-fault collection proceedings under the preliminary injunction standard), *appeal dismissed* No. 20-225, (2d Cir.

May 11, 2020).  "[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'"  *Benisek v. Lamone*, 585 U.S. ---, ---, 138 S. Ct. 1942, 1943 (2018) (per curiam) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)); *see also Woodstock Ventures, LC v. Woodstock Roots LLC*, 837 F. App'x 837, 838 (2d Cir. 2021) (same).  The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held."  *Benisek*, 585 U.S. at ---, 138 S. Ct. at 1943 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  A party seeking a preliminary injunction "must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips in its favor, and (4) that the injunction serves the public interest."  *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273–74 (2d Cir. 2021); *see also Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) (noting that to obtain a preliminary injunction, "the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief'" (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010))).

### b.  The Federal Arbitration Act

Plaintiffs assert that the Court has the authority to grant a motion to stay and enjoin the Defendants' arbitral proceedings "as [c]ourts have repeatedly held that the [Federal Arbitration Act] does *not* apply to the arbitration clauses in [Plaintiffs'] no-fault insurance policies."  (Pls.' Reply 12 (first quoting *GEICO v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *1 (E.D.N.Y. Nov. 16, 2018); and then citing cases).)

8

The Mayzenberg Defendants assert that the Federal Arbitration Act applies to Plaintiffs' arbitration clauses as courts "regularly apply the [Federal Arbitration Act] to enforce New York no-fault arbitrations as a matter of course" and "[t]he Second Circuit also requires the [Federal Arbitration Act] to be applied to valid contracts involving interstate commerce." (Defs.' Opp'n 6 (citing *In re Chung & President Enters. Corp.*, 943 F.2d 225, 229 (2d Cir. 1991)).) In support, the Mayzenberg Defendants argue that (1) the Second Circuit's decision in *Mun*, 751 F.3d at 94 "implie[s] that the [Federal Arbitration Act] would apply to those open arbitration proceedings, such as those at issue in the instant appeal," (2) there are "multitude of opinions" in this district that have applied the Federal Arbitration Act to no-fault insurance contracts, (3) pursuant to the Federal Arbitration Act, this matter invokes federal jurisdiction, the contracts affect interstate commerce, and "the arbitration clauses at issue are found in valid written agreements," (4) "[t]he fact that New York or New Jersey law requires a contract to include an arbitration clause as a minimum requirement does not mean that [Plaintiffs'] contracts are not the manifestation of a 'bargained-for' exchange between [Plaintiffs] and the policyholder," and (5) Plaintiffs "cannot claim that it somehow did not voluntarily assent to the arbitration clauses — or any other terms — in its own policies" as Plaintiffs "*voluntarily* enter[ed] the no-fault insurance market of [New York] — well knowing that a certain state law requires minimum levels of benefits — because they have determined that it makes good business sense for them" and "impose[] the terms of the policies and assignments on the individual insureds and their assignees." (*Id.* at 7–10 (citing cases).)

The Federal Arbitration Act governs disputes where: "(1) there is a written arbitration agreement; (2) diversity provides an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315

F.3d 151, 154 (2d Cir. 2003) (first citing 9 U.S.C. § 2; and then citing *In re Chung and President Enters.*, 943 F.2d at 229); *see also New Prime Inc. v. Oliveira*, 586 U.S. ---, ---, 139 S. Ct. 532, 536 (2019) ("The Federal Arbitration Act requires courts to enforce private arbitration agreements.").  The Supreme Court has interpreted the Act as reflecting "a liberal federal policy favoring arbitration agreements," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)), and "plac[ing] [arbitration] agreements 'upon the same footing as other contracts,'" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. ---, ---, 140 S. Ct. 1637, 1643 (2020) (quoting *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989)).  "It thereby follows that parties are not required to arbitrate unless they have agreed to do so."  *Meyer*, 868 F.3d at 73 (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).

Because the Federal Arbitration Act "requires courts to enforce privately *negotiated* agreements to arbitrate," *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011) (emphasis added) (first citing 9 U.S.C. § 1; then quoting *Volt Info. Scis., Inc.*, 489 U.S. at 478; and then citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003)), district courts in the Second Circuit have disagreed about whether they have the authority to enjoin arbitrations based on statutorily mandated no-fault insurance arbitration clauses, *see Mayzenberg*, 2018 WL 6031156, at *3 ("[T]he question of whether a federal district court has the power to stay and enjoin private arbitration proceedings when there is a valid agreement to arbitrate is an open one in the Second Circuit." (citing *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011)); *GEICO v. Zaitsev*, No. 20-CV-3495, 2021 WL 3173171, at *1 n.2 (E.D.N.Y. July 27, 2021) (noting that the Federal Arbitration Act does not preclude a

10

preliminary injunction in a no-fault insurance action); *GEICO v. Grand Med. Supply, LLC*, No. 11-CV-5339, 2012 WL 2577577, at *2 (E.D.N.Y. July 4, 2012) (noting that the arbitration clause in the policy was not "a 'creation' of state law; rather, it [wa]s a 'requirement' of state law" because the plaintiffs "'bargain[ed] for' the right to arbitrate claims that fall within the policies' arbitration clause by choosing to do business in New York and offering the arbitration clause required by New York's Insurance Law" and stating that "there can be no question that a policy of automobile insurance affects interstate commerce, the starting point for any analysis is the [Federal Arbitration Act], not state law").

In *Mayzenberg*, a prior case involving similar claims against Defendant Mayzenberg, the plaintiffs moved to stay all pending and future no-fault insurance collections arbitrations. *See Mayzenberg*, 2018 WL 6031156, at *1. In concluding that the court had the authority to grant a stay of arbitrations, the court explained that although the Federal Arbitration Act "prevents federal district courts from enjoining private arbitrations where an arbitration clause is present in the governing contract," a "mandatory arbitration clause . . . prescribed by [s]ection 5106(b) of New York Insurance Law, does not result in arbitrations that are 'truly voluntary' because it is mandated by statute and not by voluntary agreement of the parties." *Id.* at *3. "[U]nlike a bargained-for arbitration clause, the parties . . . [we]re not permitted to choose where the arbitrations take place, who will serve as the arbitrators, or any other procedural components of the arbitration." *Id.* (citing 11 N.Y. Comp. Codes R. & Regs. § 65-4.5); *see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 263 (E.D.N.Y. 2012) (concluding that the "right to arbitrate is a creation of state no-fault law" and the defendants "presented no evidence that the . . . insurance contracts bargained for the right to arbitrate affirmative fraud claims through their private agreements"); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 380

(E.D.N.Y. 2012) (noting that "the parties cannot be said to have evinced an intention or bargained for the right to arbitrate affirmative fraud claims through their private agreements" where "local law mandates that disputes be arbitrable" and the plaintiff's contracts "merely adhere[d] to this mandate, parroting the words of the statute or silently adopting its provisions").

Because the Federal Arbitration Act "requires courts to enforce privately *negotiated* agreements to arbitrate," *UBS Fin. Servs., Inc.*, 660 F.3d at 649 (emphasis added), and the arbitration clauses in Plaintiffs' contracts were mandated under New York no-fault statutes rather than bargained for, the Court adopts the reasoning in *Mayzenberg* — and numerous other courts in this district — that the Federal Arbitration Act is inapplicable and it has the authority to enjoin no-fault arbitration proceedings. *See Beynin*, 2021 WL 1146051, at *9 (noting that the court was "persuaded by the rationale in *Mayzenberg*" that "it has the authority to stay pending no-fault proceedings"); *GEICO v. Zilberman*, No. 20-CV-209, 2021 WL 1146086, at *1 (E.D.N.Y. Mar. 25, 2021) (granting motion to stay no-fault insurance arbitrations and civil court collection actions); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 ("[T]he court does not consider . . . the Federal Arbitration Act . . . as barring its authority to enjoin pending and future arbitrations, or future state law collection suits." (first citing 9 U.S.C. § 2; and then citing *Mayzenberg*, 2018 WL 6031156, at *3–4, 9)); *GEICO v. Moshe*, No. 20-CV-1098, 2020 WL 3503176, at *1 n.2 (E.D.N.Y. June 29, 2020) ("[The defendants] also argue that the Federal Arbitration Act prohibits granting a preliminary injunction staying the pending arbitrations.  However, courts have concluded that the [Federal Arbitration Act] does not apply to no-fault insurance collections arbitrations." (first citing *Mayzenberg*, 2018 WL 6031156, at *4; and then citing *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018))); *State Farm Mut. Auto. Ins. Co.*, 352 F. Supp. 3d at 232–33 ("To the extent that [the defendants] may be heard to

challenge this [c]ourt's authority to enjoin the pending or future arbitration proceedings under the Federal Arbitration Act . . . , the [c]ourt rejects this argument for the reasons it stated in [*Mayzenberg*, 2018 WL 6031156, at *3–4]." (citing 9 U.S.C. § 1)).

Contrary to the Mayzenberg Defendants' assertion, the Second Circuit's decision in *Mun*, 751 F.3d at 101, does not "impl[y] that the [Federal Arbitration Act] would apply to . . . open arbitration proceedings, such as those at issue in the instant appeal." (Defs.' Opp'n 7.) In *Mun*, the Second Circuit affirmed the denial of a motion to compel arbitration of no-fault insurance claims under theories of common law fraud and RICO. *Mun*, 751 F.3d at 101. Although the defendants relied on "citations to the [Federal Arbitration Act]," the court noted that the "real question" was whether the plaintiff's insurance policies, which "implement[ed] requirements imposed by New York law," applied to fraud claims. *Id.* at 97. Without expanding on the Federal Arbitration Act, the court concluded that "[c]omplex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into" New York's arbitration process for no-fault coverage. *Id.* at 99. Thus, *Mun* distilled the parameters of what can be meaningfully prosecuted in New York no-fault arbitration proceedings and addressed the resolution of ambiguities in arbitration provisions. *See Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir. 2015) (stating that "if an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability" and noting that such a "presumption may tip the scale if an agreement is truly ambiguous" (first citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010); and then citing *Mun,* 751 F.3d at 97)); *Fenton v. Criterion Worldwide*, No. 18-CV-10224, 2020 WL 1489795, at *4 (S.D.N.Y. Mar. 27, 2020) ("[C]ourts only apply the 'presumption of arbitrability' if an 'enforceable arbitration agreement is ambiguous about

whether it covers the dispute at hand.'" (first citing *Granite Rock Co.*, 561 U.S. at 302; and then

citing *Mun,* 751 F.3d at 97)); *Beynin*, 2021 WL 1146051, at *6 (noting that the defendants did

not address "the limits of the arbitral forum when it comes to allegations of systemic fraud" and

agreeing with the plaintiffs that the claims could not be meaningfully pursued in no-fault

insurance proceedings); *GEICO v. Strutsovskiy*, No. 12-CV-330, 2016 WL 11258223, at *5

(W.D.N.Y. Dec. 2, 2016) ("In light of [*Mun*], it is clear that defendants may not compel

arbitration of [the plaintiff's] claim for reimbursement of fraudulent no-fault claims already paid

to defendants. . . . Thus, resolution of this action within this court is appropriate." (citing *Allstate

Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 207 (E.D.N.Y. 2013))), *report and recommendation

adopted*, 2017 WL 4837584 (W.D.N.Y. Oct. 26, 2017) (granting motion to stay no-fault

arbitrations of unpaid insurance claims).  Indeed, numerous cases, which postdate *Mun*, have

held that the Federal Arbitration Act does not bar a court from enjoining no-fault arbitration

proceedings.  *See Beynin*, 2021 WL 1146051, at *8; *Zilberman*, 2021 WL 1146086, at *1;

*Moshe*, 2020 WL 3503176, at *1 n.2; *Mayzenberg*, 2018 WL 6031156, at *1; *Wellmart RX, Inc.*,

435 F. Supp. 3d at 456; *State Farm Mut. Auto. Ins. Co.*, 352 F. Supp. 3d at 232–33.

Furthermore, courts have a "strong interest in judicial economy," which may support a

stay of pending and future no-fault arbitrations.  *Mayzenberg*, 2018 WL 6031156, at *4 (quoting

*Elzanaty*, 929 F. Supp. 2d at 220); *see also GEICO v. Strut*, No. 19-CV-728, 2019 WL 6338023,

at *8 (W.D.N.Y. Nov. 26, 2019) (concluding that "[j]udicial economy tips the balance of . . .

equities decidedly in [the plaintiff's] favor, to avoid irreparable harm"), *report and

recommendation adopted*, 2020 WL 1820500 (W.D.N.Y. Apr. 10, 2020); *Excel Imaging, P.C.*,

879 F. Supp. 2d at 254 ("Arbitration is stayed in the interest of judicial economy.").  Although

the Federal Arbitration Act "strong[ly] mandate[s] that contractual arbitration rights be

14

respected," "it cannot be said that the drafters of [section] 5106(b) intended or that the notions underlying the [the Federal Arbitration Act] permit the haphazard and contradictory concurrent flow of litigation and arbitration." *Elzanaty*, 929 F. Supp. 2d at 220. "[I]f [no-fault arbitration] rights are delayed, rather than effectively terminated," courts may "avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck." *Id.* While federal law governs, "New York [s]tate courts have stayed arbitrations under precisely the same facts." *Id.* at 221 (first citing *Autoone Ins. Co. v. Manhattan Heights Med., P.C.*, 899 N.Y.S.2d 57 (Table), 2009 WL 2357009, at *3 (Sup. Ct. 2009); and then citing *St. Paul Travelers Ins. Co. v. Nandi*, 841 N.Y.S.2d 823 (Table), 2007 WL 1662050, at *8 (Sup. Ct. 2007)); *see also Liberty Mut. Ins. Co. v. Raia Med. Health, P.C.*, 35 N.Y.S.3d 179, 182 (2016) (affirming a motion to stay pending and future no-fault arbitration proceedings where there was a "multiplicity of actions and arbitrations[] and the risk of inconsistent results (citing cases)); *Autoone Ins. Co.*, 2009 WL 2357009, at *3 (finding that "the issuance of a preliminary injunction is necessary to prevent the repetitive litigation and arbitration of numerous [no-fault] claims for reimbursement").

Accordingly, the Court finds that the Federal Arbitration Act does not apply to Plaintiffs' no-fault insurance policies and exercises jurisdiction over the request for a preliminary injunction of no-fault insurance arbitration proceedings.

### c. Anti-Injunction Act

Plaintiffs seek a stay "enjoining . . . Defendants from *commencing* any [no-fault] insurance collection lawsuits against [Plaintiffs], pending the disposition of [the] declaratory judgment claim in this action." (Pls.' Mem. 1, 24 (emphasis added).) Plaintiffs assert that the

Anti-Injunction Act does not bar a motion "to stay no-fault collections arbitration[s] and to enjoin the filing of new collections arbitration or litigation." (Pls.' Reply 14.)

The Mayzenberg Defendants assert that the Anti-Injunction Act bars an injunction because "the general rule has been and remains that an injunction cannot issue to restrain a state action *in personam* involving the same subject matter from going on at the same time." (Defs.' Opp'n 17, 19.) In support, Mayzenberg Defendants argue that (1) "[t]he 'necessary in aid of its jurisdiction' exception does not allow a federal court to enjoin state proceedings merely because they involve issues presented in a federal *in personam* action" and (2) "courts in this Circuit have rejected such creative notions such as that 'insurance proceeds' or 'litigation' itself, is a *res* so as to incorrectly invoke the 'aid-of-jurisdiction' exception to the [Act]." (*Id.* at 19–20 (first quoting 17A Wright & Miller, *Federal Practice and Procedure* § 4225; and then quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 445 F. Supp. 2d 356, 365 (S.D.N.Y. 2006)).)

The Anti-Injunction Act "bars a federal court from enjoining a proceeding in state court unless that action is 'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Doc.'s Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93 (2d Cir. 2019) (quoting *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004)). "Because 'the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the [s]tates and their courts, the exceptions should not be enlarged by loose statutory construction.'" *Edible Int'l, LLC v. Google, LLC*, No. 18-CV-216, 2019 WL 1052180, at *1 (D. Conn. Mar. 5, 2019) (quoting *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

While "the Anti-Injunction Act limits the authority of federal district courts to enjoin pending, previously filed state court proceedings," *Mayzenberg*, 2018 WL 6031156, at *7 (citing

16

28 U.S.C. § 2283), the "Act does not prevent a federal court from restraining a party from instituting future state proceedings," *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) (first citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965); and then citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985)); *see also In re Baldwin-United Corp.*, 770 F.2d at 335 (noting that "the Anti-Injunction Act . . . bans injunctions against actions *pending* in state court, subject to specified exceptions" (emphasis added) (citing 28 U.S.C. § 2283)); *Sun Life Assur. Co. of Canada v. Diaz*, No. 14-CV-1685, 2015 WL 1826088, at *5 (D. Conn. Apr. 22, 2015) ("The Anti-Injunction Act only bars stays of suits currently pending in state court, not injunctions against future actions." (first citing *Dombrowski*, 380 U.S. at 484 n.2; then citing *Engelman v. Cahn,* 425 F.2d 954, 958 (2d Cir. 1969); and then citing *Turner v. LaBelle*, 251 F. Supp. 443, 446 (D. Conn. 1966))); *Gutman v. Klein*, No. 03-CV-1570, 2010 WL 11601992, at *4 (E.D.N.Y. July 26, 2010) ("Although the Anti-Injunction Act bars the [c]ourt from enjoining the pending state actions, the [c]ourt is not so constrained with respect to defendants' future claims."); *SR Int'l Bus. Ins. Co.*, 445 F. Supp. 2d at 362 n.7 ("The Anti-Injunction Act applies only to state proceedings that have already been initiated." (citing *In re Baldwin-United Corp.*, 770 F.2d at 335)); *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971, 2005 WL 2205335, at *2 (E.D.N.Y. Sept. 9, 2005) (noting that "the Anti-Injunction Act . . . prohibits a federal court from staying *pending* state court proceedings" absent an applicable exception (emphasis added) (first quoting 28 U.S.C. § 2283; and then citing *Standard Microsystems Corp. v. Texas Instruments, Inc.*, 916 F.2d 58, 60 (2d Cir. 1990))).

Although the Mayzenberg Defendants are currently prosecuting two civil court lawsuits, (Pls.' Mem. 8), Plaintiffs only seek to enjoin them "from *commencing* any [no-fault] insurance

collection lawsuits against [Plaintiffs], pending the disposition of [the] declaratory judgment claim," (*id.* at 1), which renders the Anti-Injunction Act inapplicable. *See Wisoff v. City of Schenectady*, No. 07-CV-34, 2009 WL 606139, at *7 (N.D.N.Y. Mar. 9, 2009) (stating that "[e]ven assuming the existence of pending state court actions, [the] plaintiff does not seek to enjoin any actions 'commenced before the filing of . . . this action' but rather, seeks to enjoin [the] defendant from 'commencing any prosecution (not yet commenced),'" which renders the Anti-Injunction Act inapplicable); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (limiting an injunction to future state court collection actions where "although [the plaintiff] note[d] that [forty-five] collection proceedings [we]re currently pending in state court, [the] motion d[id] not explicitly seek to stay the state court proceedings" and "[p]resumably, this omission was deliberate"). Because the Anti-Injunction Act does not bar the stay of future state court actions, the Court exercises jurisdiction over the request to enjoin Defendants from commencing no-fault insurance state court collection actions, in addition to exercising jurisdiction over the request to staying all pending and future arbitration actions. *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 ("[T]he court does not consider . . . the Anti-Injunction Act as barring its authority to enjoin . . . future state law collection suits." (first citing 28 U.S.C. § 2283; and then citing *Mayzenberg*, 2018 WL 6031156, at *3–4, 9)); *GEICO v. Cean*, No. 19-CV-2363, 2019 WL 6253804, at *4 n.3 (E.D.N.Y. Nov. 22, 2019) ("[The plaintiff] is asking the [c]ourt to, *inter alia*, restrain a party from instituting state proceedings. It is well-settled that a district court may do that." (first citing *Pathways, Inc*, 329 F.3d at 114; and then citing *In re Baldwin-United Corp.*, 770 F.2d at 335)); *Mayzenberg*, 2018 WL 6031156, at *9 (denying motion to stay pending state court collection proceedings but granting motion to stay future state court collection proceedings because "the

Anti-Injunction Act does not prevent federal courts from enjoining proceedings in state courts that have not yet been filed" (citing *Dombrowski*, 380 U.S. at 484 n.2)).

Accordingly, the Court finds that Anti-Injunction Act does not bar Plaintiffs' request for a preliminary injunction of future no-fault insurance state court proceedings.

### d.   Preliminary injunction

Plaintiffs argue that a temporary stay of (1) future "civil court collection cases" and (2) pending and future "AAA arbitrations is both necessary and warranted, and will not result in any cognizable prejudice to . . . Defendants." (Pls.' Mem. 9, 24.)

The Mayzenberg Defendants oppose a preliminary injunction because "the economic impact is devastating." (Defs.' Opp'n 5.) In support, the Mayzenberg Defendants assert that Plaintiffs fail to show irreparable harm and a likelihood of success on the merits. (*Id.* at 22–25.)

The Court addresses whether Plaintiffs have shown (1) a likelihood of success on the merits or sufficiently serious questions going to the merits, (2) that they are likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips decidedly in their favor, and (4) that the injunction serves the public interest.

### i.   Likelihood of success on the merits

Plaintiffs assert that they have "shown [they] ha[ve] a likelihood of success on the merits on — or, at a minimum, a serious question going to the merits of — its declaratory judgment claim." (Pls.' Mem. 15.) In support, Plaintiffs assert that the "Complaint sets forth considerable evidence that . . . Defendants were involved in an illegal kickback and referral scheme." (*Id.* at 17–19.) Plaintiffs further assert that the Complaint "has very colorably alleged that . . . Defendants made pervasive misrepresentations regarding the medical necessity of their supposed healthcare 'services.'" (*Id.* at 19.) In support, Plaintiffs assert that (1) the Mayzenberg

Defendants subjected automobile victims "at the Avenue X Clinic to a course of medically unnecessary acupuncture services" and (2) "Defendants' fraudulent billing and treatment protocol . . . would not be readily evident upon the review of a single bill in a single arbitration" whereas "an aggregated review of the hundreds . . . of bills and treatment reports . . . reveals a systematic pattern in which the patients treated at the Avenue X Clinic . . . are routinely subjected to a *nearly identical course of treatment*, without regard to . . . individual circumstances." (*Id.* at 21–22.)

The Mayzenberg Defendants assert that Plaintiffs have not established any likelihood of success against Dai Mai Acupuncture, P.C.[6] (Defs.' Opp'n 25.) In support, the Mayzenberg Defendants argue that (1) the Complaint and Plaintiffs' moving papers "reveal[] that the case against Dai Mai Acupuncture, P.C. is tied entirely to its arguments concerning improper marketing and advertising conducted by Dr. Koyen and Relief Medical, P.C.," (2) [t]here are no checks produced in the Complaint or the moving papers from Dai Mai Acupuncture, P.C. to any of the kick-back entities referred to by Plaintiff[s]," (3) "Mayzenberg testified extensively in [*Mayzenberg*, 2018 WL 6031156, at *1] in a deposition conducted by counsel on this matter that he paid for marketing which is the subject of a fully briefed summary judgment motion," (4) "[t]he argument that kick-backs were paid to attorneys or individuals associated with attorney's offices is entirely unsupported in this motion," (*id.* at 25), and (5) "discovery . . . will reveal that Dr. Koyen . . . [took] actions to attract patients[,] advertise the practice, and build goodwill," including the use of radio, advertisements, and telephone calls, (Settling Defs.' Opp'n 15; Defs.'

---

[6] While it is unclear whether the Mayzenberg Defendants argue that Plaintiffs have not established any likelihood of success against Mayzenberg, (*see* Defs.' Opp'n 25 (noting that Plaintiffs "ha[ve] not established any likelihood of success against *Dai Mai Acupuncture, P.C.*" (emphasis added))), the Court nevertheless considers the application as to both Dai Mai Acupuncture P.C. and Mayzenberg.

Opp'n 25 (adopting the "factual arguments regarding improper marketing" from Settling Defs.'

Opp'n).)

To justify a preliminary injunction "the movant must establish '(1) either (a) a likelihood

of success on the merits or (b) sufficiently serious questions going to the merits to make them a

fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'"

*Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019) (quoting *Faiveley Transp.*

*Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)).  "The 'serious questions'

standard permits a district court to grant a preliminary injunction . . . where it cannot determine

with certainty that the moving party is more likely than not to prevail on the merits of the

underlying claims, but where the costs outweigh the benefits of not granting the injunction."

*Spanski Enters., Inc. v. Telewizja Polska S.A.*, 832 F. App'x 723, 724 (2d Cir. 2020) (quoting

*Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35).  "The value of an approach encompassing the

serious questions standard 'lies in its flexibility in the face of varying factual scenarios and the

greater uncertainties inherent at the outset of particularly complex litigation.'"  *Beynin*, 2021 WL

1146051, at *6 (quoting *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35).  District courts in the

Second Circuit have generally found that "[l]ikelihood of success is not the focus at the early

stages of a case [involving an alleged scheme to defraud an insurer of assigned no-fault benefits]

because any likelihood of success inquiry would be premature."  *Zaitsev*, 2021 WL 3173171, at

*1 (quoting *Elzanaty*, 929 F. Supp. 2d at 217).  "Instead, [district courts] look to whether there is

a serious question going to the merits to make them a fair ground for trial."  *Id.*; *see also*

*Wellmart RX, Inc.*, 435 F. Supp. 3d at 453 (applying the "serious question" standard in no-fault

proceeding); *Zilberman*, 2021 WL 1146086, at *2 (same); *GEICO v. Advanced Comprehensive*

*Lab'y, LLC*, No. 20-CV-2391, 2020 WL 7042648, at *5 (E.D.N.Y. 2020) (same); *Parisien*, 352

F. Supp. 3d at 234 (same).

A medical professional corporation is prohibited from "directly or indirectly offering [or]

giving . . . any fee or other consideration to or from a third party for the referral of a patient . . .

in the connection with the performance of professional services." 8 N.Y. Comp. Codes R. &

Regs. § 29.1; *see also GEICO v. Jacques*, No. 14-CV-5299, 2017 WL 9487191, at *2 (E.D.N.Y.

Feb. 13, 2017) ("New York also prohibits paying kick-backs for patient referrals." (citing 8 N.Y.

Comp. Codes R. & Regs. § 29.1(b)(3))), *report and recommendation adopted*, 2017 WL

1214460 (E.D.N.Y. Mar. 31, 2017); *Arthur Ave. Med. Servs., PC v. GEICO Ins. Co.*, ---

N.Y.S.3d ---, ---, 2021 WL 1568969, at *4 (Civ. Ct. 2021) ("[A medical] corporation may not

share professional service fees with third parties, such as referral fees." (citing 8 N.Y. Comp.

Codes R. & Regs. § 29.1(B)(4))). "If a medical professional corporation engages in . . .

unprofessional conduct, it is rendered ineligible for a requested no-fault reimbursement by virtue

of 11 N.Y. Comp. Codes R. & Regs. § 65-3.16(a)(12)." *Mayzenberg*, 2018 WL 6031156, at *7

(quoting *Badia*, 2015 WL 1258218, at *9); *see also Jacques*, 2017 WL 9487191, at *2 ("To be

eligible for reimbursement payments under the no-fault law, a provider of healthcare services

must comply with applicable licensing requirements." (citing 11 N.Y. Comp. Codes R. & Regs.

§ 65-3.16(a)(12))). "New York law [also] provides that defendants may be held liable for

medically unnecessary services under New York's [no-fault] insurance laws." *Advanced*

*Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *7 (citing *Long Is. Radiology v. Allstate Ins.*

*Co.*, 830 N.Y.S.2d 192, 194 (App. Div. 2007)). "[A] complaint alone can be sufficient to grant

an injunction, [and] [t]his is particularly true where . . . the complaint comprehensively details

regulatory violations, unnecessary medical services, and unlawful referrals." *Moshe*, 2020 WL 3503176, at *2 (collecting cases).

The Complaint alleges that the Mayzenberg Defendants (1) subleased space and were "required to pay kickbacks in exchange for the referral of automobile accident victims to the Avenue X Clinic" as a "precondition of renting office space," (Compl. ¶¶ 5, 67), (2) paid kickbacks to Nina Brouk and Dona Catalina and "issued checks for the referral of patients to a series of shell companies secretly owned and operated by" the Dovmans, (*id.* ¶¶ 60, 80–82), (3) engaged in an improper referral arrangement and subjected automobile victims to "exaggerated diagnoses" and "medically unnecessary acupuncture services" at the Avenue X Clinic, (4) "virtually never" conducted "legitimate" acupuncture examinations on automobile victims, failed to develop "discrete treatment plans designed to treat the[m]," and conducted initial and follow-up acupuncture examinations using "checklist forms," which were improperly billed, (*id.* ¶¶ 320, 322, 341, 343, 352, 355, 369, 371), and (5) "fraudulently inflated their billing by charging for . . . 'adjunct' acupuncture procedure[s]" such as cupping and moxibustion," (*id.* ¶ 373). These allegations sufficiently demonstrate a serious question going to the merits. *See Zaitsev*, 2021 WL 3173171, at *2 (finding a serious question going to the merits where the complaint "detailed allegations of a complex scheme of fraudulent activity," including, *inter alia*, that the defendants "(1) submitted charges . . . for healthcare services that were medically unnecessary and in some cases not even performed, (2) submitted bills and treatment reports that misrepresented and exaggerated the level and type of medical services provided, [and] (3) provided the alleged fraudulent healthcare services pursuant to illegal kickback and self-referral arrangements"); *Beynin*, 2021 WL 1146051, at *7 (finding a serious question going to the merits where, *inter alia*, the "[the defendants] d[id] not explain why — or contest that — multiple individuals in the

23

same accident received identical treatment plans and diagnoses on the same day" or address "assertions regarding improper billing"); *Zilberman*, 2021 WL 1146086, at *2 (finding a serious question going to the merits where the "complaint provide[d] an extremely detailed overview of a complicated scheme in which [*inter alia*,] the defendants are alleged to have (1) provided fraudulent healthcare services that were not medically necessary, (2) used billing codes that exaggerated the level and type of medical services provided in order to increase the charges submitted to plaintiffs," and (3) "relied upon illegal kickback arrangements"); *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *6 (finding a serious question going to the merits where the plaintiffs sought a declaratory judgment that the plaintiffs have "no right to receive payment for over $8.8 million in pending claims . . . because, *inter alia*, the billed-for services were 'medically unnecessary and were provided — to the extent that they were provided at all — pursuant to pre-determined fraudulent protocols designed to financially enrich the [d]efendants'" and the complaint detailed "'a complicated scheme of alleged fraudulent activity,' supported by specific examples and exhibits" (quoting *Elzanaty*, 929 F. Supp. 2d at 222))); *Moshe*, 2020 WL 3503176, at *2 (noting that a "plethora of precedent demonstrates courts routinely find a 'serious question going to the merits' under similar circumstances" (first citing *Strut*, 2020 WL 1820500, at *1; then citing *Parisien*, 352 F. Supp. 3d at 234; and then citing *Elzanaty*, 929 F. Supp. 2d at 222); *Cean*, 2019 WL 6253804, at *5 (finding a serious question about the merits where the plaintiff alleged "facts relating to [the defendants'] fraudulent activity in its [c]omplaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme").

The Mayzenberg Defendants have been sued for similar claims, which further raises questions about the payments being sought.  *See Mayzenberg*, 2018 WL 6031156, at *7

("[B]ecause the [c]ourt finds that Mayzenberg, through his professional corporations, paid the Dovmans for the referral of patients in connection with the performance of acupuncture services, there is a likelihood of success on the merits of [the plaintiff's] declaratory judgment claim."); *Strut*, 2019 WL 6338023, at *8 (noting a serious question about the merits where "[t]wice before, [the defendant] has faced civil and criminal litigation under circumstances pertaining to fraudulent billing" and "[t]he prior circumstances added some context to the considerable detail that [the plaintiff] has placed in the present complaint").

Because the Complaint details alleged fraudulent practices, the Court rejects the Mayzenberg Defendants' argument that Plaintiffs have not satisfied their evidentiary burden. (Defs.' Opp'n 25); *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *4–5 (rejecting the defendants' argument that "the evidence proffered by [the plaintiff] [wa]s insufficient to satisfy the elements for injunctive relief" where the plaintiff alleged that the defendants "perpetrated a fraudulent medical billing scheme where [the] defendants submitted medically unnecessary claims for reimbursement to [the plaintiff] in furtherance of defendants' financial gain" and "provide[d] specific factual examples of [the] defendants' allegedly fraudulent scheme and exploitation of the New York [no-fault] insurance system"); *Moshe*, 2020 WL 3503176, at *2 ("While many courts have granted injunctions after considering a more developed record, a complaint alone can be sufficient to grant an injunction.  This is particularly true where, as here, the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals." (first citing *Strut*, 2020 WL 1820500, at *2; and then citing *Excel Imaging*, 879 F. Supp. 2d at 254–64)).

Accordingly, the Court finds that Plaintiffs have shown a serious question as to whether the Mayzenberg Defendants are eligible to receive reimbursement for no-fault benefits.

### ii.   Irreparable harm

Plaintiffs argue that "numerous federal and state courts — adjudicating no-fault insurance fraud and racketeering cases just like this one — have concluded that, under analogous circumstances, wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitute" irreparable harm.  (Pls.' Reply 2 (citing cases).)  Plaintiffs assert that "it is the clear and present risk of inconsistent determinations/judgments that constitutes the irreparable harm" and not "mere litigation expense."  (*Id.* at 3–4.)

The Mayzenberg Defendants argue that Plaintiffs' proposed injury does not qualify as irreparable harm because it has a calculable and reimbursable monetary value.  (Defs.' Opp'n 22.)  In support, the Mayzenberg Defendants argue that (1) Plaintiffs' "motion calculates and submits the estimated monetary value for the pending no-fault arbitrations, including the costs of litigating those claims," (2) Plaintiffs do not "attempt to provide any evidence that it cannot cover . . . arbitration costs or would not be able recoup those costs," and (3) the Complaint proves that costs can be recouped as Plaintiffs "seek[] $1 million in [no-fault] insurance payments Defendants already received."  (*Id.* at 22–23.)  The Mayzenberg Defendants further assert that "[t]he Second Circuit has already explained that the prospect of pending [no-fault] arbitrations does not constitute irreparable harm" and Plaintiffs' "motion raises identical legal issues that the Second Circuit confronted in [*Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017)] and . . . suffers from the same fatal defects."  (*Id.* at 24.)

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020) (quoting *Faiveley Transp. Malmo AB*, 559 F.3d at 118).  To establish irreparable harm, "[p]laintiffs must

demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  Absent "extraordinary circumstances," injunctions are also unavailable "[w]here there is an adequate remedy at law, such as an award for money damages." *Id.* (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)).  "Courts have readily held that irreparable harm occurs where . . . an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action." *State Farm Mut. Auto. Ins. Co.*, 352 F. Supp. 3d at 233 (first citing *Strutsovskiy*, 2017 WL 4837584, at *6; and then citing *Elzanaty*, 929 F. Supp. 2d at 222); *see also Zaitsev*, 2021 WL 3173171, at *2 ("Courts in this [c]ircuit have found . . . that '[i]rreparable harm occur[ed] where "an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action."'" (second and third alterations in original) (first quoting *Moshe*, 2020 WL 3503176, at *1; and then citing cases).

Defendants' reliance on *Harvey Family Chiropractic*, is misplaced.  677 F. App'x at 716.  In *Harvey Family Chiropractic*, the Second Circuit summarily affirmed a district court's denial of a preliminary injunction of no-fault proceedings and noted that there was "no evidence in the record that" the plaintiffs could not "be fully compensated through money damages for the alleged harm suffered from the defendants' fraudulent claims."  *Id.* at 718.  The court noted that "[e]ven if the defendants obtain other [no-fault] reimbursements in state court and arbitrations while th[e] case is pending, the plaintiffs are free to recover those payments should they prevail

on their RICO claim" and reiterated that "'mere injuries . . . in terms of money, time and energy necessarily expended' absent a stay of ongoing state court and arbitration proceedings 'are not enough' to establish irreparable harm." *Id.* (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)). "Summary order or not, [*Harvey Family Chiropractic*] . . . does not address the risk of inconsistent judgments." *Strut*, 2020 WL 1820500, at *3 (citing *Harvey Family Chiropractic*, 677 F. App'x at 718); *see also Wellmart RX, Inc.*, 435 F. Supp. 3d at 451 ("[T]he Second Circuit [in *Harvey Family Chiropractic*] said nothing of the risk of inconsistent judgments."); *Moshe*, 2020 WL 3503176, at *2 ("*Harvey* [*Family Chiropractic*] does not preclude granting an injunction to avoid inconsistent judgments." (citing *Wellmart*, 435 F. Supp. 3d at 451)).

Plaintiffs do not claim irreparable harm "'in terms of money, time and energy necessarily expended' absent a stay of ongoing state court and arbitration proceedings," *Harvey Family Chiropractic*, 677 F. App'x at 718 (quoting *Jayaraj*, 66 F.3d at 39), but assert that "the likely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and fraud-based claims, threaten [Plaintiffs] with irreparable harm absent the requested injunctive relief," (Pls.' Mem. 15), which is sufficient. *See Zaitsev*, 2021 WL 3173171, at *2 n.3 (noting that although the defendants cited *Harvey Family Chiropractic* "in arguing that wasted time and resources do not constitute irreparable harm," "*Harvey* [*Family Chiropractic*] does not preclude granting an injunction to avoid inconsistent judgments" (citing *Moshe*, 2020 WL 3503176, at *2)); *Beynin*, 2021 WL 1146051, at *4 (concluding that "the likely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this [c]ourt's ultimate disposition of the declaratory judgment and fraud-based claims" constituted irreparable harm (citing cases)); *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *5 (rejecting

the defendants' argument based on *Harvey Family Chiropractic* that the plaintiff will not suffer irreparable harm and noting that if the defendants were "permitted to prosecute the ongoing collection proceedings, [the plaintiff] faces imminent and non-speculative risks of inconsistent judgments and unnecessary expenditure of time and resources on arbitrations that may be resolved by the instant, pending declaratory judgment action," which shows irreparable harm); *Mayzenberg*, 2018 WL 6031156, at *5 (noting that unlike the injuries noted in *Harvey Family Chiropractic*, "it is the inconsistency to which hundreds of arbitrations will inevitably give rise, the frustration of the declaratory judgment relief for which [the plaintiff] is likely to succeed on the merits, and the resources spent vacating hundreds of arbitration awards that satisfies the irreparable harm prong"); *Strutsovskiy*, 2017 WL 4837584, at *7 (staying no-fault collection arbitrations pending the resolution of the plaintiff's declaratory judgment action and rejecting the notion that *Harvey Family Chiropractic* barred a preliminary injunction).

The Mayzenberg Defendants are "currently prosecuting [thirty-nine] AAA arbitrations and two civil court lawsuits," (Pls.' Mem. 8), which presents a risk of inconsistent judgments and irreparable harm, *see Cean*, 2019 WL 6253804, at *5 (agreeing with the plaintiff "that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm"); *Elzanaty*, 929 F. Supp. 2d at 222 (noting that aside from "piecemeal resolution," "there is a concern . . . with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with th[e] [c]ourt's ruling, and at worst, essentially ineffective" and "agree[ing] that allowing a large number of proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm to [the plaintiff] from which it cannot recover"). The Mayzenberg Defendants have

continued to commence new arbitration proceedings, including "[ten] AAA arbitrations seeking to collect more than $18,000.00" after Plaintiffs filed the Complaint, (Pls.' Mem. 8), which further supports injunctive relief, *see Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *5 ("Moreover, under these circumstances, the court agrees that [the plaintiff] will suffer irreparable injury that 'is neither remote nor speculative' without injunctive relief because [the plaintiff] continues to commence arbitrations before the AAA." (quoting *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66)).

Accordingly, the Court finds that Plaintiffs have shown irreparable harm.

### iii. Balance of hardships

Plaintiffs assert that "the balance of hardships tips decidedly in favor of a temporary stay" as "Defendants will suffer no hardship if their right to collect on their pending billing is adjudicated in a single, efficient declaratory judgment action, rather than on a piecemeal basis in multitudinous arbitral and civil court proceedings with the prospect of significantly varying outcomes."  (Pls.' Mem 22–24.)

The Mayzenberg Defendants assert that "[t]he injunction will inflict a huge financial toll" in light of "the financial crisis facing the healthcare community . . . as a result of the COVID-19 pandemic" and that the balance Plaintiffs owe them will continue to increase over the course of this action.  (Defs.' Opp'n 5.)

Under the third prong, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Yang*, 960 F.3d at 135 (quoting *Winter*, 555 U.S. at 24).  If there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation," courts inquire into whether there is "a balance of the hardships tipping decidedly in favor of the moving party."

*Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 43 (2d Cir. 2020) (quoting *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)); *see also Parisien*, 352 F. Supp. 3d at 233 ("Because the [c]ourt finds that there are 'serious questions going to the merits' in lieu of a 'likelihood of success on the merits,' it must further inquire as to whether . . . there is a "balance of hardships tipping decidedly" in [the plaintiff's] favor." (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979))).

A stay of thirty-nine AAA arbitrations seeking to collect more than $74,000.00 and future arbitrations and lawsuits addressing similar claims, (Pls.' Mem. 8), will save the parties time and resources and promote judicial efficiency. *See Beynin*, 2021 WL 1146051, at *8 (agreeing "with prior decisions in this [d]istrict . . . that consolidation promotes efficiency in cases like this" "notwithstanding [the defendants'] claim that they will suffer financially" (first citing *Cean*, 2019 WL 6253804, at *5; and then citing *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8)); *Zilberman*, 2021 WL 1146086, at *2 ("[G]ranting the stay and injunction will actually save all parties time and resources. Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action." (first quoting *Cean*, 2019 WL 6253804, at *5; and then citing *Elzanaty*, 929 F. Supp. 2d at 222)); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 455 (same); *Strut*, 2019 WL 6338023, at *8 ("Judicial economy tips the balance of those equities decidedly in [the plaintiff's] favor, to avoid irreparable harm." (citing *Strutsovskiy*, 2017 WL 4837584, at *7)); *Mayzenberg*, 2018 WL 6031156, at *7 ("[I]t is obviously more efficient and beneficial for [the defendants] if all of their claims are resolved in one action, rather than in hundreds of different proceedings.").

While the Court acknowledges the impact of the COVID-19 pandemic on the healthcare industry, a stay of proceedings does not deprive the Mayzenberg Defendants of their rights as they would be entitled to any balance owed plus interest if they eventually prevail on the claims. *See Zaitsev*, 2021 WL 3173171, at *3 (noting that the "defendants will not be disadvantaged if the stay is granted since they will be entitled to statutory interest on their unpaid claims should they ultimately prevail" (first citing *Elzanaty*, 929 F. Supp. 2d at 222; and then citing *Mayzenberg*, 2018 WL 6031156, at *7)); *Mayzenberg*, 2018 WL 6031156, at *7 ("[I]f the defendants] prevail in this action, they are entitled to statutory interest on their unpaid claims."); *Parisien*, 352 F. Supp. 3d at 234–35 ("If the preliminary injunction is granted and [the plaintiff] fails to prove its claims, then, at worst, [the defendants'] recovery of the no-fault benefits to which they are entitled will be delayed; all [the defendants] can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled.").

Accordingly, the Court finds that the balance of hardships tips decidedly in Plaintiffs' favor.

### iv.   Public interest

Neither party addresses whether the injunction would harm the public interest.  (*See* Defs.' Opp'n; Pls.' Mem; Pls.' Reply.)

In analyzing the public interest prong, a court must consider "the public consequences in employing the extraordinary remedy of injunction" and ensure that the proposed injunction will not harm the public interest.  *Yang*, 960 F.3d at 135–36 (quoting *Winter*, 555 U.S. at 24); *SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012).  There is no indication that granting an injunction would harm the public interest.  *See Strut*, 2020 WL 1820500, at *3 n.8

(finding that the public interest factor was neutral in analysis on whether to stay no-fault proceedings); *Beynin*, 2021 WL 1146051, at *10 (noting that "preventing fraud of the sort alleged [in violation of New York's no-fault laws] is in the public interest" (citing *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456)); *Mayzenberg*, 2018 WL 6031156, at *10 (noting that "allegations of fraud on our health care system generally, and even the specific civil RICO scheme alleged . . . have become too common" and stating that "[p]reventing fraud on our health care system is also in the public's interest").

Because there are serious questions going to the merits of the case, Plaintiffs would suffer irreparable harm absent a stay, the balance of hardships tip decidedly in Plaintiffs' favor, and there is no indication of public harm as a result of a stay, the Court grants Plaintiffs' motion for a preliminary injunction.

### e. Security for the injunction

Plaintiffs argue that they "should not be required to post any security for the requested injunction" because the "injunction will not cause Defendants any prejudice at all, [in as much] as — in the unlikely event that Defendants ultimately prevail in this case — they will be entitled to collect a high rate of interest on their outstanding no-fault insurance claims" and "courts have discretion to waive the security requirement of Rule 65(c), especially where — as here — a movant has not demonstrated any proof of likelihood of actual harm." (Pls.' Mem 25.)

The Mayzenberg Defendants do not address this request. (*See* Defs.' Opp'n.)

Rule 65(c) of the Federal Rules of Civil Procedure states that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The phrase 'in such sum as the court deems

proper' indicates that the [d]istrict [c]ourt is vested with wide discretion in the matter of security[,] and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm . . . ." *Doc.'s Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (first quoting *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961); and then citing *Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976)); *see also Doc.'s Assocs. LLC v. Hai*, No. 19-CV-1968, 2019 WL 2385597, at *5 (E.D.N.Y. June 6, 2019) ("[A] district court in its discretion may deny a bond altogether if there is 'no proof of likelihood of harm' to the non-movant." (alteration in original) (quoting *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 202 (E.D.N.Y. 2013))). "The Rule 65(c) security requirement is designed to 'assure[] the [restrained] party that it may readily collect damages from the funds posted in the event that it was wrongfully [restrained], and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff.'" *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 135 (2d Cir. 2014) (alterations in original) (quoting *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011)).

Because Plaintiffs have established a likelihood of harm, a stay is unlikely to prejudice the Mayzenberg Defendants, and the Mayzenberg Defendants may readily collect damages from Plaintiffs, the Court declines to require Plaintiffs to post a bond. *See Zaitsev*, 2021 WL 3173171, at *3 (agreeing with the defendant that "the requested injunction will not cause [the defendants] any prejudice at all," noting that "GEICO undoubtedly has the ability to pay if defendants prevail," and waiving Rule 65(c) requirement (first quoting *Moshe*, 2020 WL 3503176, at *4; then citing *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456; and then citing *Mayzenberg*, 2018 WL 6031156, at *10)); *Beynin*, 2021 WL 1146051, at *10 (waiving the security requirement of Rule 65(c) where the parties "may well benefit from consolidation and interest" (first citing *Cean*,

2019 WL 6253804, at *5; and then citing *Elzanaty*, 929 F. Supp. 2d at 222)); *Advanced*

*Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *8 (same); *Moshe*, 2020 WL 3503176, at *4

("GEICO undoubtedly has the ability to pay if defendants prevail.  As such, defendants will

suffer no harm from the injunction and the bond requirement is waived." (citing *Wellmart*, 435 F.

Supp. 3d at 456)); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (waiving "the security requirement

of Rule 65(c) in light of the systemic nature of the fraud alleged in the complaint and the lack of

prejudice to [the] defendants resulting from a preliminary injunction" (citing *Mayzenberg*, 2018

WL 6031156, at *10)); *Mayzenberg*, 2018 WL 6031156, at *10 (waiving the security

requirement of Rule 65(c) where the court "concluded that a preliminary injunction will not

result in any prejudice to [the defendants] and would actually benefit them if all of their claims

are decided in one proceeding").

### III.  Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion to stay all no-fault

insurance collection arbitrations pending before the American Arbitration Association between

Plaintiffs and the Mayzenberg Defendants and enjoins the Mayzenberg Defendants from

commencing any further no-fault insurance collection arbitrations against Plaintiffs, pending the

disposition of the declaratory judgment claim.  The Court also enjoins Defendants from

commencing any no-fault insurance collection lawsuits against Plaintiffs, pending the disposition

of Plaintiffs' declaratory judgment claim.

Dated:  August 12, 2021
          Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge